IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JOSHUA C. MULLINS,

        Plaintiff,

v.                          CIVIL ACTION NO.  2:21-cv-00347

RISH EQUIPMENT COMPANY,

        Defendant.

MEMORANDUM OPINION & ORDER

Pending before the court is plaintiff Joshua C. Mullins' Motion to Remand Case to Circuit Court of Boone County. [ECF No. 4]. For the reasons contained in the following memorandum opinion, the Motion [ECF No. 4] is **DENIED**.

I.    **Procedural Background**

Mullins filed this action in the Circuit Court of Boone County on March 16, 2020, against his former employer, Defendant Rish Equipment Company ("Rish") and former supervisor at Rish, Samuel Coakley. [ECF No. 1, Ex. A]. The single count Complaint alleged that Rish and Coakley wrongfully discharged Mullins from his job in violation of the West Virginia Human Rights Act, W. V. Code § 5-11-9(1). Coakley is a resident of Boone County, West Virginia. On April 14, Rish removed the action to this court. *Id.* Two days later, Mullins voluntarily dismissed the

1

Complaint. [ECF No. 1, Ex. B]. Mullins then filed an Amended Complaint against Rish and Coakley in state court on April 16, 2020. [ECF No. 1, Ex. C].

The parties proceeded to discovery. Boone County Circuit Judge William S. Thompson entered a scheduling order that set the trial date for March 30, 2021. [ECF No. 5, at 2]. On October 20, 2020, Mullins deposed Coakley. [ECF 1, Ex. E-2].

As the March 2021 trial date approached, Rish states that counsel for both sides negotiated with one another about a deal that would see Coakley dismissed from the suit. In the back of both parties' minds was the fact that Coakley's presence in the litigation as a codefendant defeated federal diversity jurisdiction. Rish states by sworn affidavit of Counsel Brian J. Moore that on March 17, 2021, Mullins' attorney, Mark Atkinson, placed a phone call to Brian J. Moore, counsel for Rish. [ECF No. 1, Ex. F]. During that call, Atkinson informed Moore of his intent to voluntarily dismiss Coakley from the litigation. *Id.* Moore then drafted a proposed stipulation of the agreed upon dismissal and e-mailed it to Atkinson via his assistant. *Id.* He included with the attachment the message, "I agree we will not mention during trial that Mr. Coakley was sued." *Id.* However, Moore states in his affidavit that before he could file the proposed dismissal notice, Atkinson withdrew his offer in a second phone call, saying that it would be imprudent for him to dismiss Coakley within the 1 year window in which a removal to federal court can take place. [ECF No. 1, Ex. G]. Moore further states that Atkinson offered to put Coakley's dismissal back on the bargaining table, but only if Moore would agree not

to remove the case to federal court. Moore memorialized this conversation over e-mail, telling Atkinson that he would not agree to these terms. [ECF No. 1, Ex. H].

Seven days before trial, Mullins moved for a continuance. That motion was granted and Judge Thompson set a new trial date of June 22, 2021. At the June 17, 2021 pre-trial conference, Mullins dismissed Coakley. Rish promptly filed a removal notice the next day.

Mullins now argues that Rish has improperly attempted to remove the case more than one year after its filing, in violation of the bar to removal set forth in 28 U.S.C. § 1447(c)(1). Rish argues that the removal should be considered timely and invokes the bad faith exception to the rule, arguing that Mullins intentionally kept a non-diverse party, Coakley, in the litigation solely to defeat federal jurisdiction. Mullins argues that the bad faith exception is inapplicable because Mullins engaged in substantive litigation against Coakley by deposing him and by arguing against the dismissal of the claims against him at the summary judgment stage. Mullins argues that the joinder of Coakley was purely a matter of litigation strategy and not a bad faith attempt to avoid removal.

Rish argues that that Mullins' conduct throughout the litigation demonstrates bad faith and that dismissal of Coakley at the June 17, 2021 pre-trial conference—when coupled with the earlier negotiations in which Mullins asked Rish not to remove the case in exchange for the dismissal—demonstrates that Mullins never intended to seriously litigate the case against Coakley. As to that last point, Mullins argues that he was forced to dismiss Coakley because Attorney

3

Atkinson wanted to hire Attorney Harry Hatfield as co-counsel. [ECF No. 5, at 12].

For personal reasons, Hatfield declined to join the case as Mullins' trial attorney

unless Coakley was dismissed. *Id.* Mullins argues that this is the real motivation for

dismissing Coakley; that Hatfield's value outweighed the value of keeping Coakley

in the case and therefore Coakley was dismissed as part of a cost benefit analysis.

According to Mullins, this was shrewd lawyering that Rish is recasting as bad faith.

Mullins also seeks attorney's fees for the expense of remanding the case to state

court.

## II.   Discussion

Original diversity jurisdiction is conferred upon federal district courts

pursuant to 28 U.S.C. § 1332. When a defendant discovers that a case filed in state

court, which was not initially removable, later becomes removable (generally

speaking because a non-diverse party is dismissed), the defendant has 30 days to

file a notice of removal in the district court. 28 U.S.C. § 1446(b)(3). However, "[a]

case may not be removed . . . on the basis of jurisdiction conferred by section 1332

more than 1 year after commencement of the action, unless the district court finds

that the plaintiff has acted in bad faith in order to prevent a defendant from

removing the action." 28 U.S.C. § 1446(c)(1).

Fourth Circuit law strictly construes against removal. *See, e.g., Mulcahey v.*

*Columbia Organic Chems.* Co., 29 F.3d 148, 151 (4th Cir. 1994) ("Because removal

jurisdiction raises significant federalism concerns, we must strictly construe

removal jurisdiction."). Thus, the party seeking removal bears the burden of

4

demonstrating jurisdiction. *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370 (4th Cir. 2003). Rish's claimed basis for federal subject matter jurisdiction is diversity of citizenship under 28 U.S.C. § 1332, which provides that a federal district court has original jurisdiction over all civil actions between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Critically, section 1332 requires complete diversity among the parties, meaning the citizenship of each plaintiff must be different from the citizenship of each defendant. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

In this case, complete diversity between the parties was achieved when Coakley was dropped from the litigation. The record reflects that Rish filed a notice of removal within 30 days of Mullins dropping Coakley from the state action on June 17, 2021. It is also undisputed that the present removal took place more than one year after Mullins filed his complaint. The question before me is therefore whether the to apply the bad faith exception outlined under 28 U.S.C. § 1446(c)(1): "A case may not be removed . . . on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." The parties' arguments turn on whether there was a legitimate reason from a standpoint of litigation strategy to keep Coakley in the case, or if Mullins was simply engaged in bad faith forum manipulation.

### A. The bad faith standard

The Fourth Circuit has not set the exact contours of what types of litigation behavior will amount to bad faith. This is only to be expected; "bad faith" is "quintessential subjective standard language." *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225 (D. N.M. Oct. 31, 2014). What is clear—as I have previously stated— is that a defendant arguing for the bad faith exception to apply faces "an arduous burden that requires the defendant to put forth evidence of forum manipulation." *Ramirez v. Johnson & Johnson*, No. 2:15-cv-09131, 2015 U.S. Dist. LEXIS 102967, at *7. Using legitimate litigation strategy to avoid federal jurisdiction is not necessarily indicative of bad faith or forum manipulation. *See Massey v. 21st Century Centennial Ins. Co.*, No. 2:17-cv-01922, 2017 WL 3261419, at *4 (S.D. W. Va. July 31, 2017); *Hackney v. Golden Girl,* No. 3:16-cv-06569, 2016 WL 6634898, at *2 (S.D. W. Va. Nov. 8, 2016).

Regardless of the subjective qualities of the principle, this Court has previously applied a two-part test for forum manipulation, originally announced in *Aguayo*, that I find to be instructive and will continue to adopt. At least one other court has declined to adopt the *Aguayo* test for concern that it "has the potential to deter plaintiffs from dismissing defendants they realize are not necessary as well as force plaintiffs to request meaningless discovery to avoid the exception being exercised." *Dutchmaid Logistics, Inc. v. Navistar, Inc.*, No. 2:16-cv-857, 2017 WL 1324610, at *9 (S.D. Ohio April 11, 2017). I find that the test is a fair and articulable way to reason through a highly subjective and case specific inquiry.

6

The first, "and central inquiry" is "'whether the plaintiff actively litigated against the removal spoiler." *Aguayo*, 59 F. Supp. 3d at 1264. A finding that the plaintiff did not actively litigate against the spoiler party constitutes bad faith and the inquiry ends. *Massey*, 2017 WL 3261419, at *5 (citing *Aguayo*, 59 F. Supp. 3d at 1264). But if there has been some form of active litigation against the spoiler, then a presumption of good faith arises. *Id.* The defendant may overcome the presumption of good faith by showing in step two of the test that the plaintiff only kept the removal spoiler in the case to defeat removal. *Id.*; *see also Ramirez*, 2015 WL 4665809, at *7. To find in favor of the defendant, there must be "strong unambiguous evidence of the plaintiff's subjective intent for which the plaintiff cannot offer any plausible explanation." *Ramirez*, 2015 WL 4665809, at *7.

These rules should not be confused with those that would apply to a claim of fraudulent joinder. In an instance of fraudulent joinder, the plaintiff has no legitimate claim to pursue against the non-diverse party. *Hartley v. CSX Transp.*, 187 F.3d 422, 424 (4th Cir. 1999). Bad faith or forum manipulation on the other hand occurs when the plaintiff has a nominally legitimate claim against the non-diverse party but doesn't truly intend to prosecute it; including the claim or clinging to the claim is only intended to stifle federal removal.

## B. The motion to remand

### 1. *Mullins engaged in active litigation against Rish*

This court has previously adopted the rule that any non-token amount of discovery or other active litigation against a removal spoiler entitles the plaintiff to

7

the presumption of [good faith.]." *Massey*, 2017 WL 3261419, at *7. To gauge whether litigation is more than a token gesture, I look to "(i) the amount of time the spoiler spent joined to the case; (ii) the size and money value of the case." *Id.* (quoting *Aguayo*, 59 F. Supp. 3d at 1275).

*Aguayo* is the signature federal case on removal and discusses the interpretation of the section 1446 bad faith exception in detail before deriving the two part test that this Court has adopted. The *Aguayo* court wrestled with the implications of drawing a hard and fast bright line rule by which to analyze plaintiffs' behavior, reasoning that while plaintiffs will go to great lengths to avoid federal court, there are any number of tactics which give rise to a certain plausible deniability vis a vis bad faith forum manipulation. "For example, if the case is slow-moving, the plaintiff may have been putting off taking discovery from the removal spoiler until after the one-year mark, and then received an acceptable settlement offer from the spoiler before any discovery was taken." *Aguayo*, 59 F.Supp. 3d, at 1275.

Nevertheless, the *Aguayo* court was willing to look for certain definitive factors that exist when the parties enter the federal forum, most importantly the extent and nature of the discovery and claims. The defendant in that case argued that the plaintiff's voluntary dismissal of the spoiler only six days before trial was a clear indication of forum manipulation. The court disagreed and held that the plaintiffs were entitled to the good faith presumption: "[t]he Plaintiffs deposed [the spoiler] . . . [m]oreover, their case against [the spoiler] was such a slam dunk that

8

that the only possible argument [removal defendant] could make is that good faith requires a plaintiff to realistically expect monetary recovery from the removal-spoiling defendant." *Id.* at 1282. A good faith effort, the court held, need not seek a perfected judgment at all; "discovery is a perfectly legitimate end for naming a defendant" if the underlying claims are substantive. *Id.* at 1283. In sum, at this first stage of the test, a deposition or other form of discovery taken from the spoiler defendant is usually dispositive.

Like in *Aguayo*, I am presented with direct evidence that plaintiff Mullins took the removal spoiler's deposition on October 20, 2020. [ECF No. 1-5, at 36]. In such a scenario, I agree with the *Aguayo* court that the plaintiff should almost always be entitled to the presumption of good faith. Rish is forced to concede this point and cannot point to precedent or other compelling reason why I should not consider a deposition against a removal spoiler as a *de facto* example of active litigation. Rish argues that "a review of the entire history of the case" establishes only token efforts on the part of Mullins to prosecute his case against Coakley. [ECF No. 6, at 5]. For instance, Rish apparently never served Coakley with the original Summons and Complaint filed on March 16 2020. *Id.* The Original Complaint contained few substantive allegations against Coakley. When Rish removed the Original Complaint on April 14, 2020, Mullins dismissed the complaint and then re-filed, adding more heft to the allegations against Coakley. *Id.* at 6. These arguments miss the mark and cannot account for the fact that fully six months after Mullins filed the Amended Complaint, he took Coakley's deposition. Depositions require

9

time, money, and the preparation of the attorneys. Even a brief deposition can hardly be a token gesture. I find that Mullins is entitled to the good faith presumption. I turn now to step two.

2.     *This is the rare case in which there is strong evidence of forum manipulation*

As I have explained, courts that have examined the statutory bad faith exception have strained to set forth a clear framework that will discourage plaintiffs from engaging in forum manipulation and provide ample notice to the parties about what litigation tactics will trigger application of the bad faith exception. Courts are loathe to permit overly intrusive inquiry into the methods and strategies that attorneys may employ during the pre-trial and discovery periods in the name of zealously advocating for their clients. For that reason, it would be improper for me to permit additional discovery into the issue of forum manipulation. I note that in order for removal to take place at all at this late juncture, a defendant must already have some strong indication of bad faith that is apparent from the developed record: "Congress could have placed the bad-faith exception in § 1447, the remand statute, but instead, it put the exception in the removal statute." *Aguayo*, 59 F. Supp. 3d at 1276. In other words, a defendant may not remove a case to federal court outside of the one–year time limitation and then undertake a fishing expedition to dig up the evidence of bad faith after the fact.

Drawing all inferences in favor of the plaintiff, I must review the limited evidence at my disposal and determine if the defendant has amply demonstrated

10

that but-for the threat of federal jurisdiction, Mullins would have dropped Coakley from his lawsuit. This is an extraordinarily high bar to clear because hard evidence of a but-for subjective motivation is almost never available. It requires that there be no plausible alternative explanation for the plaintiff's decision to keep the spoiler party tied up in the case. *Ramirez*, 2015 WL 1665809, at *4.

Because direct evidence of subjective intent to keep a non-diverse party joined for the sole purpose of defeating removal is so rarely available, there is not much precedent for a case in which bad faith is ultimately found in the second step of the *Aguayo* test. A readily available example is found in this court's decision in *Massey*. My esteemed colleague, Chief Judge Johnston, determined that the plaintiff acted in bad faith by intentionally stalling when accepting a settlement check from an insurance carrier defendant—Plaintiff's counsel sent an e-mail saying, "[will you] attempt to remove this case if I accept [the offer]?" *Massey*, 2017 WL 3261719, at *18.

In this case it is undisputed that Mullins dismissed the spoiler after the one year window and just shortly before trial. While this may seem at first blush like an indication that the Mullins had no real interest in pursuing a claim against Coakley, the timing alone is not dispositive; there are any number of plausible reasons why a plaintiff may hold a co-defendant in for such a stretch of time. *See, e.g.*, *Dutchmaid*, 2017 WL 1324610, at *14 (""The timing of the events at issue, while unfortunate for the Defendant are insufficient to show bad faith on the part of the

11

Plaintiff'") (quoting *WBCMT 2007-C33 Office 7870, LLC v. Breakwater Equity Partners LLC*, No. 1:14-CV-588, 2014 WL 6673712, at *7 (S.D. Ohio Nov. 24, 2014)).

In this case, however, I am persuaded to find that Mullins did act with the intent to spoil removal and that but for the looming threat of removal, he would have dismissed his claims against Coakley before the pre-trial conference and, in fact, before the one year deadline. By sworn affidavit, Rish's counsel, Brian Moore states that on March 17, 2021, Mullins' counsel informed him that he intended to dismiss Mr. Coakley from the case. [ECF No. 1, Ex. F]. In response, Mr. Moore sent by e-mail a draft of an agreed stipulation order. Mullins' counsel, however, seemingly had second thoughts. According to Attorney Moore's affidavit, Mullins counsel, Attorney Atkinson, called back to say that he would not be dismissing Coakley that day because he had remembered that it had not yet been one year since the filing of the complaint. In other words, dismissal would leave him vulnerable to removal.  He asked then if Attorney Moore would agree not to remove the case in exchange for the voluntary dismissal of Coakley. Mr. Moore memorialized this conversation in an e-mail response to Mr. Atkinson in which he stated that he would not agree to do so. *Id.*

Shortly after that, Mullins requested a continuation of the case; Judge Thompson granted that motion and the trial was moved from March 23, 2021, to June 22, 2021. [ECF No. 6, at 7]. At the final pre-trial conference on June 17, 2021, Mullins moved to dismiss the spoiler. The one-year removal window had by then passed. While the timing of these event might not ordinarily be enough to

12

demonstrate bad faith, I am compelled to weigh the unique circumstances in each case when deciding this issue. Here, the communications between the lawyers, followed by the motion to continue indicate that Mullins' motivations were strictly related to the selection of the forum.

Attorney Atkinson does not now dispute that he made such statements. Instead, Mullins argues that making a conditional offer of dismissal contingent upon securing an agreement from the other side not to remove was part of his litigation strategy. Mullins cites *Herrington v. Nature Conservancy*, No. CV 21-240-GW-GJSx, 2021 WL 942749 (C.D. Cal. Mar. 11, 2021) for the proposition that this type of deal making is not indicative of bad faith. Mullins argues that this situation is identical to the strategy employed by counsel in that case: "[t]he court relied on direct evidence, specifically noting that the plaintiff conditioned her first proposal to dismiss the in-state defendant on an agreement by the diverse defendant not to remove and then, after the one-year period passed, agreed to the same proposal once removal was no longer an issue." [ECF No. 7, at 5] (discussing *Herrington*, 2021 WL 942749, at *5).

I find a few notable factual differences between the case at bar and *Herrington*. First, the defendant in that case initiated negotiations by making a settlement offer to the plaintiff just 30 days before the end of the one-year removal window. Plaintiff took all of that time to review and decide on the offer before ultimately accepting it and dismissing the spoiler—two days after the removal window closed. Taking the time to review the offer was, in that court's view, a

13

plausible alternative explanation to a "but-for federal jurisdiction" motivation. *Herrington*, 2021 WL 942749, at *14–15. Here, Mullins is incorrect that he merely conditioned his offer on Rish's agreement not to remove the case—that was a modification to an offer he had already made to dismiss Coakley, which was unconditional. It was only after he remembered—and told Attorney Moore—that the removal window was still open that he withdrew his stated intent to dismiss Coakley and then returned to the bargaining table by asking Attorney Moore to agree not to remove. This strikes me as a crucial difference between this situation and *Herrington*. In this case, Attorney Atkinson put his cards on the table that he had no real interest in pursuing a claim against Coakley and was willing to dismiss him from the case in exchange for no real concessions from the other side.

Mullins says that the reason he decided to ultimately dismiss Coakley was because he wanted to hire Attorney Hatfield as co-counsel for trial, that Attorney Hatfield had a conflict because of some outside acquaintanceship with the spoiler, and that sound legal strategy demanded that Mullins drop the spoiler to resolve the conflict so that he could secure Attorney Hatfield's services. [ECF No. 7, at 6]. This may be so, but Mullins did not secure Attorney Hatfield's services until some time after the communications between Attorneys Atkinson and Moore which I've already discussed. Accordingly, I need not decide whether this explanation would serve as a plausible alternative rationale for Mullins' decision to keep Coakley in the lawsuit until June 17, 2021.

I **FIND** that the bad faith exception to section 1446 is applicable in this case and accordingly, the Motion to Remand [ECF No. 4] is **DENIED**. Plaintiff's request for attorney's fees incurred as result of Rish's removal is also **DENIED**.

### III.     Conclusion

For the foregoing reasons, Mullins' Motion to Remand [ECF No. 4] is **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 28, 2021

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

15